[Civ. No. 6246.  First Appellate District, Division One.—March 15, 1928.]

GEORGE STRAFIOTIS, Respondent, v. MARION P. DANIELS, Appellant.

Barry J. Colding, Theodore Hale, and B. P. Gibbs for Appellant.

Charles P. Knights and Edmund J. Holl for Respondent.

PARKER, J., *pro tem.*—This is an action for personal injuries alleged to have been suffered by plaintiff by reason of being struck and knocked down by an automobile driven by defendant. The case was tried by the court sitting with a jury, and a verdict returned in favor of plaintiff, pursuant to which judgment was entered, and thereafter a new trial denied. From the said judgment defendant prosecutes this appeal, bringing here likewise for review the trial court's order denying her motion for a new trial.

The appeal is based upon the following assignments of error:

1. The verdict is contrary to the evidence and contrary to law in this: (a) The proof discloses no negligence on the part of defendant; (b) The plaintiff himself was guilty of contributory negligence as a matter of law.

2 and 3. The court erred in refusing to give certain instructions requested by appellant.

4. The court erred in giving to the jury a certain instruction.

On the question of the evidence it becomes necessary to detail to some extent the facts of the case. In this statement we are necessarily taking the case as the record discloses the same and are assuming as true the facts which support the verdict upon the well-recognized principle that

appellate courts will not disturb the verdict of a jury where there is a substantial conflict of evidence on material points and when there is substantial evidence to support the verdict.

The accident happened between 11 and 12 P. M. near the corner of Valencia Street and Twentieth Street in the city of San Francisco. The locality named is a business district. Valencia Street runs in a northerly and southerly direction and Twentieth Street runs in an easterly and westerly direction. On Valencia Street are two sets of street-car tracks, one being for the north-bound cars and the other for cars south bound. At the southeast corner of the intersection or thereabouts, as will more fully appear, there had been designated by the police department of San Francisco a safety zone for those desiring to board street-cars going northerly. The easterly boundary of the safety zone is marked by a white line twelve inches wide extending northerly and southerly about six feet east from the east rail of the north-bound car tracks and parallel therewith. The zone begins at the property line of Twentieth Street and extends southerly the length of a street-car and about three feet beyond. This safety zone is plainly marked and was seen by the defendant. On the night referred to plaintiff, accompanied by another man, left the sidewalk and went over and stood in the safety zone, intending to board a north-bound car. He had been standing some two or three minutes in the safety zone and no street-car was yet in sight. Then he heard the sound of automobiles coming from the south, and he turned his head around to observe them. Suddenly, approaching apparently from nowhere, a jitney bus Ford car at a speed of between twenty-eight and thirty miles per hour sped out of the traffic and struck plaintiff, knocking him down and inflicting the injuries complained of. At the time he was struck he was still standing in the safety zone. The night was clear and dry, there being no rain. The atmospheric conditions can be best understood from the testimony of the defendant that she could see and did see plaintiff standing in the safety zone while she was still a block away. The testimony further shows that defendant gave no warning of her approach.

In these facts we find sufficient to support the verdict and to indicate the negligence of defendant. Summariz-

ing, the record discloses the defendant traveling through a business district at an unlawful rate of speed, approaching an intersection at the same unlawful rate, failing to sound any warning of her approach and running through a safety zone.

The Motor Vehicle Act of this state (Stats. 1923, p. 517), at the time of the accident, January, 1924, provided, among other things: That any person driving a vehicle on the public highways of this state shall drive the same in a careful and prudent speed, not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and no person shall drive any vehicle upon a public highway at such a speed as to endanger the life, limb, or property of another. Also, the speed of vehicles was specifically restricted to fifteen miles per hour in a business district. Section 134 of the Motor Vehicle Act provided: "Where local authorities have plainly marked upon the surface of the highway safety zones for the protection of such passengers (referring to street car passengers) vehicles shall not at any time be operated or driven within such zones." In addition thereto there was a local ordinance of the city and county of San Francisco regulating the operation of jitney busses within the city and county by the terms of which all jitney bus drivers were required to equip the jitney bus with a bell or horn of sufficient size to insure its being heard at a distance of one hundred feet, and requiring that the bell or horn must be rung or sounded when such bus is about to cross a highway. This ordinance was offered and received in evidence at the trial. The defendant was familiar with the locality and had driven on the streets at the place involved for some time. She testified that the markings indicating the safety zone were plain and distinct and could be seen and were seen by her.

As indicated, there is sufficient to support the finding of negligence on the part of defendant.

Appellant then, conceding for this part of her contention negligence on her part, urges that plaintiff too was negligent, and that the latter negligence so far proximately contributed to the accident as to preclude plaintiff's recovery. In support of this contention appellant cites many authorities on the degree of care required of a pedestrian in crossing a street, and then urges the point that a pedestrian using a

safety zone under the conditions here present is held to the same degree of care. The appellant's further argument is that plaintiff should have been constantly alert and watchful to look up and down the street and keep himself apprised of approaching vehicles likely to endanger his safety.

The duties of a pedestrian crossing a street and those of one standing in a safety zone are not the same, and the comparison is too remote to merit further consideration. The evidence here discloses that plaintiff was within the safety zone; and conceding that he still must exercise some degree of care for his own safety, we conclude that his acts and conduct did measure up to the degree required. Plaintiff, standing in the safety zone, did give attention to the approaching traffic upon his being aware that cars were coming and was in nowise delinquent. The testimony was that the approaching cars were following a course offering no suggestion of danger to plaintiff when the car of defendant came in and across the zone of safety.

Appellant seems to predicate her claim upon the fact that plaintiff was in the safety zone at that hour of night, and the further fact that no car was in sight; and upon these facts alone claims plaintiff negligent as a matter of law. We cannot so hold. The area described as a safety zone is just what the name indicates. And when plainly marked, as in the case here, it is a place of refuge for those intending to board the street-cars at that point. If we are to draw fine distinctions and attempt to regulate the use of safety zones according to time and traffic, it will be but one step toward taking from metropolitan traffic all security of life and limb. It may be that under some circumstances it would be the height of folly for one to stand in such a zone, but under the facts of this case this cannot be even intimated. It is a matter of common knowledge that during the later hours of the night street-cars travel faster, and with fewer passengers being taken on, and therefore the operators of such cars do not maintain as vigilant an outlook for intending passengers as during the busier hours. The usual and ordinary mode of notifying the street-car operator of an intent to become a passenger is not to stand upon the street corner but to enter the zone provided. The existence of a well-marked safety zone is an invitation from constituted authority with an assurance of safety guaranteed

by law. That is the common conception, and we see no reason to disturb it under the facts as here presented. A fact, important or unimportant, in the instant case is that no testimony was offered by defendant other than her own deposition, and she did not appear in person.

Appellant next claims that the trial court erred to her prejudice in refusing to give certain requested instructions. ■ We have examined the offered instructions, and in the abstract no serious objection could be offered to them as generally stating the law. However, in refusing these instructions the trial court's specific notation was "Refused, covered by other instructions." We find upon a careful reading of all of the instructions that this is true. The jury were fully instructed upon the matters set out in the instructions refused. This suffices and meets any objection based upon the court's refusal to repeat the law in the language chosen by a party to the action. It is needless, therefore, to quote the instructions refused, and then insert herein the charge as a whole, merely for purposes of comparison.

■ Finally, appellant complains of the court's action in giving an instruction as follows: "In the answer of defendant it is claimed, among other things, that the accident in question was caused by plaintiff's contributory negligence. I charge you that the defense of contributory negligence is an affirmative defense, and under the law of this state the burden of proving such defense is upon the defendant unless such defense is shown or can be inferred from the evidence given in support of plaintiff's case. If, therefore, the defense of contributory negligence has not been shown by and cannot be inferred from the evidence given in support of plaintiff's case, then I instruct you that unless the defendant has proven by a preponderance of the evidence that the accident in question was caused by and through plaintiff's contributory negligence such defense has not been made out, and your verdict as to such defense must be in favor of plaintiff and against the defendant."

The first objection to this instruction is as follows: "This instruction suggests that 'the defense of contributory negligence has not been shown by and cannot be inferred from the evidence in support of plaintiff's case'; whereas there is much evidence given in support of plaintiff's case plainly showing that he was guilty of contributory negligence."

This garbled quotation from the instruction is manifestly unfair. The words quoted were preceded by these words, "If, therefore." The point is frivolous.

The next objection is that by the use of the words, "that unless defendant has proven by a preponderance of the evidence that the accident in question *was caused* by and through plaintiff's contributory negligence," the jury were told that then plaintiff should prevail on that issue.

The words are unhappily chosen and import the existence of a doctrine unknown to the law of negligence. Appellant urges that the language seems to shift the burden of proof in the entire case. We do not so conclude, because the instruction was specifically restricted to the defense of contributory negligence, which under our law is an affirmative defense. But we refuse approval of the instruction, not on the ground urged by appellant, but on the ground that the theory of contributory negligence has never meant that the negligence of plaintiff must have *caused* the injury. It is sufficient if it is shown that such negligence directly contributed to it. While the use of the language referred to in this particular was inaccurate, yet we do not feel that it is of sufficient moment to nullify the judgment rendered. As indicated hereinbefore the jury were elsewhere fully and carefully instructed on the subject of contributory negligence and could not possibly have been misled by the instruction complained of.

Judgment affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 14, 1928.

All the Justices present concurred.